**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SAMARITAN MEDICAL CENTER,**

                                        **Petitioner,**

**-against-**                                                    **7:09-CV-01072**
                                                                **(TJM/GHL)**

**LOCAL 1199, SERVICE EMPLOYEES**
**INTERNATIONAL UNION, UNITED HEALTH**
**CARE WORKERS EAST,**

                                        **Respondent.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

                        **DECISION & ORDER**

**I.      INTRODUCTION**

        Samaritan Medical Center ("Samaritan", "Hospital" or the "Petitioner"), commenced

this action in New York Supreme Court, Jefferson County against Local 1199, Service

Employees International Union, United Health Care Workers East ( "Union," or

"Respondent") seeking to vacate an Arbitration Award pursuant to § 10(4)(a) of the

Federal Arbitration Act ("FAA"). See State Court Pet. [dkt. #1-3].   The Union removed the

action to this Court, see Resp't's Notice of Removal [dkt. # 1], and cross-moved to confirm

the Arbitration Award. Cross Mot. [dkt. # 11].

## II.    BACKGROUND

Samaritan and the Union were parties to a collective bargaining agreement[1] ("CBA") that governed the employee grievance process.  This agreement provided, *inter alia*, for the availability of arbitration to resolve disputes between parties, and set forth the powers of the Arbitrator.

At the time of the events pertinent to this matter, Gary Green had been employed by Samaritan for approximately eighteen years as a radiology technician and computerized tomography ("CT") technician.  In August of 2008, Thomas Shatraw, Director of Human Resources at Samaritan, was informed of concerns regarding certain conduct of Mr. Green that other employees believed was sexual harassment.  Mr. Shatraw spoke with the employees that complained about Mr. Green's conduct.  As a result of his investigation, Mr. Shatraw determined that the complained-of conduct, combined with the fact that Mr. Green had been previously warned not to touch co-workers, warranted discharge.  Mr. Green was terminated effective August 21, 2008.  Mr. Green filed a grievance with his Union.  The Union subsequently filed a Demand for Arbitration.  The parties selected Peter A. Prosper as the Arbitrator. The parties stipulated to the following statement of the issue: "Whether Gary Green was discharged for cause. If not, what shall the remedy be?"

At the hearing, many of the complaining witnesses could not remember specific dates on which they alleged they were subjected to inappropriate conduct by Mr. Green,

---

[1] The collective bargaining agreement ("CBA") is formally known as The Agreement Between Samaritan Medical Center and Samaritan Home, Inc. and 1199 SEIU United Health Care Workers East [dkt. # 9-3].

and most did not promptly file a formal complaint of harassment.  Further, the arbitrator determined that complained-of conduct by Mr. Green consisted of "[t]apping a person on her arm to get her attention, bumping into a woman's side, or rubbing a woman's back," most of which "the women [did] not object [to], [and] at times even ask[ed] for a back rub." Opinion and Award, Ex. I at 9 - 10.

After reviewing the testimonial and documentary evidence presented by both parties, the Arbitrator found that Mr. Green had not engaged in sexual harassment as that term is defined in federal and state employment discrimination law, but that he was guilty of misconduct by inappropriate acts toward female co-workers. The Arbitrator determined that the appropriate penalty would be Mr. Green's suspension without pay for 325 days.

Samaritan filed a Petition in New York State Supreme Court, Jefferson County pursuant to section 7511(b)(1)(iii) of the New York Civil Practice Law and Rules to vacate the Award on the grounds that the Arbitrator exceeded his power by: (1) adding a mitigation requirement to the disciplinary provisions of the CBA in cases of unreported or late-reported inappropriate behavior, and/or in cases involving the inability by victims and witnesses to remember the exact dates and times of the inappropriate behavior;[2] and (2) ignoring a strong public policy requiring the prevention and prohibition of sexual harassment in the workplace.

As indicated above, the Union removed the action to this Court and cross-moves for an order to confirm the Arbitration Award. The matter is now before the Court on the

_____

[2] Petitioner argues that the Arbitrator's decision constitutes a mitigation of the penalty from discharge to suspension in instances "where victims and witnesses of harassing and inappropriate workplace behavior fail to promptly report the misconduct they witness, or where those witnesses are unable to identify the precise dates and times of the incident(s)." Pet'r's Mem. of Law [Dkt. No. 9-7] at 3.

parties' submissions.

## III.    STANDARD OF REVIEW

The FAA represents a strong federal policy favoring arbitration agreements. "Congress enacted the [FAA] to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

> The Act [ ] supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9-11. An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. § 6. Under the terms of § 9, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one.

Id. (footnotes omitted).

The Supreme Court has determined that

> [c]ollective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances. In such cases . . .  the Court made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.

United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. 29, 36 (1987).

"The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596  (1960).  "A motion to vacate filed in a federal court is not an

4

occasion for *de novo* review of an arbitral award." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).

The scope of review of an Arbitrator's decision is extremely limited. "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and it not merely his own brand of industrial justice, the award is legitimate." Nathan Littauer Hosp. Ass'n v. SEIU Local 200D, No. 90-CV-504, 1990 WL 124070, at *2 (N.D.N.Y. Aug. 24, 1990) (quoting United Steelworkers of Amer. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960)).

Confirmation of an arbitration award under the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co. v. Gottdienier, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations omitted). Given the public policy favoring arbitration, a court's review of an arbitration award under the FAA is extremely deferential. Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 139-139 (2d Cir. 2007).[3] "The arbitrator's

---

[3] In Porzig, the Second Circuit wrote:

This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process, see, e.g., Halligan v. Jaffray, Inc., 148 F.3d 197, 200 (2d Cir. 1998) (noting the strong judicial support of "the use of arbitration as a device to resolve disputes"). The value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process. See DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997); National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc., 165 F.3d 184, 190-91 (2d Cir. 1999). To encourage and support the use of arbitration by consenting parties, this Court, therefore, uses an extremely deferential standard of review for arbitral awards. See [Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)].

497 F.3d at 139-139.

rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 426 F.3d at 110.  "Only a barely colorable justification for the outcome reached" is necessary to confirm the award. Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)).

A party seeking vacatur "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  In the Second Circuit, courts will "vacate an award only upon finding a violation of one of the four statutory bases [enumerated in Section 10(a) of the FAA ], or, more rarely, if we find a panel has acted in manifest disregard of the law." Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

"Section 10 . . .  provides for vacatur of an arbitration award in four situations, all of which address 'egregious departures from the parties' agreed-upon arbitration.'" Wellpoint Health Networks, Inc. v. John Hancock Life Insurance Co., 2008 WL 1839014 (N. D. Ill. Apr. 24, 2008) (quoting Hall Street, 552 U.S. at 586).  Specifically, Section 10(a) allows vacatur:

    (1)    where the award was procured by corruption, fraud, or undue means;

    (2)    where there was evident partiality or corruption in the arbitrators, or either of them;

    (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by

which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

The Supreme Court's holding in <u>Hall Street</u> limits the application of "manifest disregard of the law" to the Section 10 bases. <u>See Hall Street Associates</u>, 552 U.S. at 585-590; <u>see also Chase Bank USA, N.A. v. Hale</u>, 19 Misc.3d 975, 2008 WL 1746984, at *4 - *5 (N.Y. Sp. Ct., N.Y. County, Mar. 31, 2008).[4]   Accordingly,  this Court will view "manifest disregard of law" as judicial interpretation of the Section 10 requirements, rather than as a separate standard of review, and will resort to existing case law to determine its

_____

[4]The New York Supreme Court, New York County, wrote in <u>Hale</u>:

The Supreme Court has now announced, however, that section 10 of the FAA provides the exclusive route for expedited judicial vacatur of an arbitral award under the federal statutory scheme. In <u>Hall Street Assocs., LLC v. Mattel, Inc.</u>, 552 U.S. 576 (2008), the Court examined the "manifest disregard" standard of the [<u>Wilko v. Swan</u>, 346 U.S. 427, 436-37 (1953)] Court for the first time, and found the concept ambiguous:

Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.... Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

<u>Id.</u> at 585 [citations omitted] ). Although the Court in <u>Hall Street</u> did not settle on its own definition of the term, it rejected the notion that "manifest disregard" embodies a separate, non-statutory ground for judicial review under the FAA. (<u>See id.</u> at 585-590). Nonetheless, by favorably citing the above-quoted language from its earlier decision in [<u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 942 (1995)], the <u>Hall Street</u> Court appears to have done nothing to jettison the "manifest disregard" standard of <u>Wilko</u>. (<u>Id.</u> at 585-586). Accordingly, this court will view "manifest disregard of law" as judicial interpretation of the section 10 requirement, rather than as a separate standard of review. It seems appropriate, however, since the standard has apparently not been overruled by the Court, to resort to existing case law to determine its contours.

2008 WL 1746984, at *4 - *5.

7

contours. <u>Hale</u>, 2008 WL 1746984, at *5.

> [R]eview under the doctrine of manifest disregard of the law is highly deferential and such relief is appropriately rare. <u>Duferco</u>, 333 F.3d at 389. An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." [<u>Wallace v. Buttar</u>, 378 F.3d 182, 189 (2d Cir. 2004)] (internal quotation marks omitted).

<u>Porzig</u>, 497 F.3d at 139.

## III.   DISCUSSION

### a.   Whether the Arbitrator Exceeded His Power By Adding a Mitigation Requirement

The Hospital contends that the Arbitrator exceeded his authority when he allegedly added an impermissible amendment to the CBA. More specifically, the Hospital claims that the Arbitrator

> elected to impose a new disciplinary requirement upon Samaritan – mandating that proven misconduct is punishable by termination only in circumstances where the victims or witnesses of improper touching and other behaviors reported the misconduct promptly, and could remember the specific dates and times of the misconduct – he violated this express limitation.

Pet'r's Mem. of Law at 6.

Arguing that the Arbitrator effectively added a provision to the CBA, the Hospital concludes that there was a violation of the portion of the CBA that provided that "[t]he arbitrator shall not have the authority to add to, subtract from, change, modify, or amend any of the provisions of this agreement."  Agreement between Samaritan Medical Center

8

and Samaritan Home, Inc. and 1199 SEIU United Health Care Workers East [dkt. # 9-3], Ex. E at Art. 15, § 4.  The Union refutes this argument, contending that the Arbitrator had full authority to determine the appropriate remedy because there was no express provision in the agreement preventing the Arbitrator from doing so. Resp't's Mem. of Law [dkt. # 11-7] at 5.  The Court agrees.

The Supreme Court has firmly established that, absent express limitation in an arbitration agreement, arbitrators may fashion a remedy they deem appropriate under the existing circumstances.  See United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. 29, 41 (1987) (suggesting that the Arbitrator shall "draw from the essence of the agreement" in absence of limitation, and that the parties "of course, may limit the discretion of the arbitrator in this respect"); see also United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960) (upholding the arbitrator's award that reduced a sanction from discharge to a ten day suspension in absence of an express limitation on the arbitrator).

In reliance on the aforementioned cases, courts have upheld an arbitrator's discretion in crafting a remedy wherein "there is no provision in the agreement that expressly limits or removes the arbitrator's authority to review or modify a penalty." Nathan Littauer Hosp. Ass'n v. SEIU Local 200D, No. 90-CV-504, 1990 WL 124070, at *5 (N.D.N.Y. Aug. 24, 1990); see also Eberhard Foods, Inc. v. Handy, 868 F.2d 890 (6th Cir. 1989) (in absence of an express contractual provision that limits the arbitrator's authority to craft the penalty, the arbitrator has not exceeded his authority).  In Nathan Littauer, the arbitration agreement in question contained a provision preventing the arbitrator from

"add[ing], subtract[ing] from, modify[ing] or otherwise chang[ing] any of the terms or provisions of the agreement." 1990 WL 124070, at *4.  Notwithstanding this provision, the Court held that the arbitrator had the authority to mitigate the penalty from discharge to suspension based on the finding that the employee did not demonstrate calloused indifference that warranted discharge. Id. at *8.  Accordingly, the court in Nathan Littauer concluded that the arbitrator was justified in crafting a suspension remedy to punish the employee's conduct. Id.

The facts of the case at-bar are on point with those of Nathan Littauer.  First, the CBA contains no express provision limiting the Arbitrator's authority to review and evaluate the penalty.  Rather, the CBA merely states, "[a]ll discipline and discharge shall only be made for just cause." Agreement between Samaritan Medical Center and Samaritan Home, Inc. and 1199 SEIU United Health Care Workers East, Ex. E at Art. 14, § 1.  The lack of express limitation on the Arbitrator's ability to fashion a remedy demonstrates that the Arbitrator had the authority to act as he did.

Furthermore, the Arbitrator correctly inferred that penalties other than discharge existed because the CBA listed potential penalties as both "discipline and discharge."  See Nathan Littauer, 1990 WL 124070, at *13 (holding that the arbitrator rightfully concluded that the agreement itself allowed for penalties other than discharge because the agreement contained the following provision: "the Employer . . . shall have the right to . . . discharge *or discipline* for cause . . .") (emphasis added).  Thus, there is no merit to Petitioner's argument that the Arbitrator effectively added a provision to the contract because the arbitration agreement so clearly suggests forms of punishment other than

10

discharge.

> Petitioner expresses concern that confirming the Arbitrator's Award
>
> will likely impede future attempts to hold employees accountable for their misconduct under the plain terms of the CBA and Employee Handbook . . . whenever a witness, out of shame, fear, indecision, or for any other reason, does not immediately report to her supervisor, or permits herself to forget the precise date and time of the incident.

Pet'r's Mem. of Law at 8.

While the Court does not condone Mr. Green's conduct, it must give deference to the arbitration award so long as the Arbitrator has not exceeded his authority.[5] Accordingly, because the Arbitrator has made a decision within the scope of his authority, the award is not subject to attack with regard to the Petitioner's first claim.

### b.    Whether the Award Violates Public Policy

The Petitioner also claims that in order for the Court to "uphold the well defined and dominant public policies at stake in this case, the Award must be vacated, and the Employee's discharge reinstated." Pet'r's Mem. of Law at 16.  The Court finds that the Award does not violate public policy, and, accordingly, the Court rejects the Petitioner's second claim.

It is well settled that under the FAA, arbitration awards may be set aside if they are in violation of public policy.  See Newsday, Inc. v. Long Island Typographical Union, 915 F.2d 840, 844 (2d Cir. 1990) ("[A] court may refuse to enforce an arbitrator's award under

---

[5] The Court notes that the employee at fault in this instance *is*  being held accountable for his misconduct.  Mr. Green will serve an unpaid suspension for nearly a year. Opinion and Award  [dkt. # 9-6], Ex. I at 10.

a collective bargaining agreement if the award is contrary to public policy.") (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987)).  The public policy must be "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supported public interests.'" W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766  (1983) (quoting Muschany v. U.S., 324 U.S. 49, 66 (1945)).

The Second Circuit has emphasized the narrow scope of the public policy exception[6] and has allowed the public policy exception to prevail only on rare occasions. Such instances have involved arbitration awards reinstating employees who had been previously discharged for sexual harassment. See Newsday, Inc. v. Long Island Typographical Union, 915 F.2d at 943.  Newsday involved an employee who had been discharged by the employer for sexually harassing female co-workers. The employee was subsequently reinstated by an arbitrator pursuant to the collective bargaining agreement. Id. at 841.  The Second Circuit looked to the Equal Employment Opportunity Commission's Guidelines and policy statements defining sexual harassment to determine whether, in that case, the arbitration award violated public policy.  The Circuit concluded that "[t]he public policy against sexual harassment in the work place is well-recognized," id., and determined that the arbitrator's award reducing the employee's punishment from

---

[6] In Saint Mary Home, Inc. v. Serv. Employees Int'l Union Dist. 1199, the Second Circuit held that:

[i]n the context of arbitration contracts, a court's authority to refuse to enforce an arbitral award on public policy grounds is narrowly circumscribed to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.

116 F.3d 41, 45 (2d Cir. 1997) (quoting Misco, 484 U.S. at 43 (internal quotation marks omitted)).

12

discharge to suspension "tend[ed] to perpetuate a hostile, intimidating and offensive work environment" and "prevent[ed] Newsday from carrying out its legal duty to eliminate sexual harassment in the work place." Id.  Consequently, the Second Circuit granted Newsday's action to vacate the award of reinstatement on the ground that reinstatement violated the public policy against sexual harassment. Id. at 844.

Petitioner argues that the facts in the case at-bar are so similar to those in Newsday that the Court is bound by Newsday.   The Court disagrees that Newsday in on point with the instant case.  At first blush, the factual scenario in Newsday seems similar to the case at-bar.  However, Newsday differs because the arbitrator in Newsday determined that the employee's behavior rose to the level of legally-defined sexual harassment.  Newsday, 915 F.2d at 841; see Way Bakery v. Truck Drivers Local 164, et al., 363 F.3d 590 (6th Cir. 2004) (finding that Newsday was distinguishable from other cases because "[i]n Newsday, the discharged employee was reinstated despite having sexually harassed female coworkers on a number of occasions").  Here, in contrast, the Arbitrator determined that while Mr. Green's behavior was "inappropriate" for the workplace, it did "not rise to the level of sexual harassment." Opinion and Award, Ex. I at 9.  More specifically, the Arbitrator determined that

> [t]apping a person on her arm to get her attention, bumping into a woman's side, or rubbing a woman's back, *especially when the women do not object, at times even ask for a back rub*, and do not report the incidents, cannot result in a conclusion of sexual harassment.

Id. at 10. (emphasis added).

Accepting the factual conclusions of the Arbitrator gained from the evidence

presented at the hearing,[7] it cannot be concluded that the Arbitrator erred in concluding

that Mr. Green's conduct did not rise to the level of sexual harassment.  The Equal

Employment Opportunity Commission has described sexual harassment in violation of

Title VII as "unwelcome, intentional touching."[8]  According to the Arbitrator's findings, Mr.

Greens conduct was not unwelcome. In fact, the Arbitrator determined that Mr. Green's

conduct was sought out, at times, by the complaining parties. See id.

Similarly, Mr. Green's conduct does not rise to the level of sexual harassment

under controlling legal precedent.  In order to

> prevail on a claim of sexual harassment based on a hostile work
> environment, a plaintiff must establish two elements: (1) that the workplace
> was permeated with discriminatory intimidation that was sufficiently severe
> or pervasive to alter the conditions of [his or] her work environment, and (2)
> that a specific basis exists for imputing the conduct that created the hostile
> environment to the employer.

Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (quoting Mack v. Otis Elevator

Co., 326 F.3d 116, 122 (2d Cir. 2003)) (internal quotation marks omitted).

"The first element of a hostile work environment claim has both an objective and

subjective component." Id. at 221. "The alleged misconduct must be severe or pervasive

enough to create an objectively hostile or abusive work environment, and the victim must

also subjectively perceive that environment to be abusive." Fenn v. Verizon

---

[7]In light of the existing case law and policy reasons for deference toward arbitration awards, the record is confined to the Arbitration Award and the parties' CBA.  Since this Court does not conduct a *de novo* review of an arbitral award, the Court has no compelling reason to refer to affidavits of witnesses, the Employee Handbook, and/or any personnel records related to Mr. Green.

[8]The EEOC issued the following policy statement: "unwelcome, intentional touching of a charging party's intimate body areas is sufficiently offensive to alter the conditions of her working environment and constitute a violation of Title VII." EEOC Policy Guidance: Sexual Harassment, N-915.035, *reprinted in* EEOC Compl. Man. (BNA) N:4001, 4016.

Communications, Inc., No. 08-CV-2348, 2010 WL 908918, at *9 (S.D.N.Y. Mar. 15, 2010)

(citing Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir.2003)) (internal quotation marks

omitted). "In determining whether a hostile work environment exists, [a fact finder] must

look at the 'totality of the circumstances.'" Terry, 336 F.2d at 148 (citing Richardson v.

New York State Dep't of Corr. Serv., 180 F.3d 426, 437-38 (2d Cir. 1999)). This must be

done "on a case by case basis considering all the individual facts at hand." Fenn, 2010

WL 908918, at *10 (quoting Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 607

(2d Cir.2006)).

The Arbitrator emphasized in his decision that the women claiming sexual

harassment had not objected to Mr. Green's conduct. Opinion and Award, Ex. I at 7-9.

The Arbitrator also found that there had been instances when the women asked Mr.

Green to engage in the complained-of conduct. Id. at 10.  Considering the totality of the

circumstances as established at the hearing, the Arbitrator did not err in concluding that

Mr. Green's conduct failed to rise to the level of legally-defined sexual harassment.

Accordingly, it cannot be concluded that the Arbitration Award violates the public policy

against sexual harassment in the workplace.

## IV.   CONCLUSION

For the reasons discussed herein, Samaritan Medical Center's Petition to vacate

the Arbitration Award rendered In the Matter of Arbitration Between Samaritan Med. Ctr.

and Serv. Employees Int'l Union United Health Care Workers East, AAA Case No. 15 300

00078 08 ("Arbitration Award" or "Opinion and Award"), is **DENIED**.  Service Employees

International Union United Health Care Workers East's cross-motion to confirm the

Arbitration Award is **GRANTED**.  The Arbitration Award is **CONFIRMED**.

**IT IS SO ORDERED**.

DATED:July 18, 2010


Thomas J. McAvoy
Senior, U.S. District Judge